BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To Be Admitted Pro Hac Vice*)
CARRIE A. LALIBERTE (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE SOMERS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWN LABORATORIES, a Tennessee company,<br><br>Defendant. | Case No. '21CV868 BAS DEB<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §§ 17200 *et seq.*; and<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §§ 1750 *et seq.*;<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Stacie Somers, individually and on behalf of all others similarly situated, through her undersigned attorneys, brings this Class Action Complaint against Defendant Crown Laboratories on actual knowledge as to her own acts, and on information and belief after due investigation as to all other allegations, as follows:

## NATURE OF THE ACTION

1. Defendant manufactures, markets, sells, and distributes sunscreen products under its Blue Lizard brand. To obtain an unfair competitive advantage in the billion-dollar sunscreen market and recognizing consumers' desire for healthy and safe products without harmful chemicals, especially as it relates to products for their children, Defendant markets the Products as "mineral-based" even though they contain less desirable, harmful, chemical-based active ingredients.

2. The purported "mineral-based" products at issue include Kids Mineral-Based Sunscreen SPF 30+ (5 oz Bottle); Kids Mineral-Based Sunscreen SPF 30+ (8.75 oz Bottle); Kids Mineral-Based Sunscreen SPF 50+ (5 oz Tube); Kids Mineral-Based Sunscreen SPF 50+ (8.75 oz Bottle); Face Mineral-Based Sunscreen SPF 30+ (3 oz Tube); Active Mineral-Based Sunscreen SPF 50+ (5 oz Tube); Active Mineral-Based Sunscreen SPF 50+ (8.75 oz Bottle); Sport Mineral-Based Sunscreen SPF 50+ (5 oz Bottle); and Sport Mineral-Based Sunscreen SPF 50+ (8.75 oz Bottle) (collectively, the "Products").[1]

3. Contrary to the "mineral-based" representations on the front of each and every Product label, each of the Products contains *chemical* active ingredients: either Octisalate 5% or Octinoxate 5.5%. Octisalate is an organic compound formed by the condensation of salicylic acid with 2-ethylhexanol that is a weak UVB filter and must be used with other UV filters to provide adequate sun protection.

---

[1] Plaintiff reserves the right to add additional products upon completion of discovery.

Octinoxate is an organic compound formed from methoxycinnamic acid and 2-ethylhexanol that also filters out UVB rays and some studies have shown it gets absorbed into the bloodstream and can cause reproductive problems in animals that have been tested.

4. Mineral-based sunscreens have become increasingly popular in recent years as consumers have prioritized safety and embraced a healthy lifestyle and as consumers are becoming more educated about the potential harmful human and environmental effects of using chemical-based sunscreens. Given their rise in popularity and corresponding increase in demand, mineral sunscreen products command a price premium over chemical sunscreen products.

5. Reasonable consumers, including Plaintiff, interpret "mineral-based" representations to mean that a product is free of chemical active ingredients, much in the same way that reasonable consumers understand that a product labeled "plant-based" does not contain meat.

6. Thus, a mineral-based sunscreen should be just what it sounds like – a sunscreen that uses minerals as its active ingredients. The Products, however, also contain chemical active ingredients. Thus, Defendant's mineral-based representations are false, misleading, and reasonably likely to deceive consumers. As a result, consumers – including Plaintiff and putative Class members – have been injured by their purchases of the Products.

7. Plaintiff brings this action on behalf of herself and all other similarly situated consumers who purchased the Products to halt the dissemination of this false, misleading, and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Based on violations of California's consumer fraud laws (detailed below), Plaintiff seeks injunctive and restitutionary relief for consumers who purchased the Products.

//

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does conduct business in California, including this District. Defendant marketed, promoted, distributed, and sold the Products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible. In addition, the acts complained of occurred in California, as Plaintiff read and relied upon Defendant's false representations and was injured by her purchase of the Products in California.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District and the acts complained of occurred in this judicial district, as Plaintiff read and relied upon Defendant's false representations and was injured by her purchases of Defendant's Products in this judicial district.

## PARTIES

11. Plaintiff Stacie Somers resides in and is a citizen of San Diego, California. On March 19, 2021, Plaintiff was exposed to, saw, and relied upon Defendant's "mineral-based" representations by reading the Kids Mineral-Based Sunscreen SPF 30+ (8.75 oz Bottle) label. She purchased the Product on Amazon.com in reliance on Defendant's "mineral-based" representations and paid

-3-
CLASS ACTION COMPLAINT

approximately $19.98 for the Product. At all relevant times, Plaintiff believed that the Product's sun protection was the result of mineral active ingredients. Plaintiff continues to desire to purchase sunscreen products that provide sun protection through mineral active ingredients, and she would purchase such a product manufactured by Defendant. Indeed, Plaintiff regularly shops online, including at Amazon.com, where Defendant's Products are sold, but will be unable to trust that Defendant is telling the truth about the mineral nature of its Products.

12. Defendant Crown Laboratories is a Tennessee company whose principal place of business is located at 207 Mockingbird Lane, Johnson City, TN 37604. Defendant manufactures, distributes, markets, and sells the Products to consumers nationwide, including in California.

## FACTUAL ALLEGATIONS

**A. Chemical- vs. Mineral-Based Sunscreen Products**

13. There are two types of sunscreen products: chemical-based and mineral-based. Chemical-based sunscreens contain various synthetic, chemical active ingredients, such as Octisalate, Octocrylene, and Octinoxate, which protect the skin by absorbing ultraviolet ("UV") radiation and dissipating it as heat.[2] Conversely, mineral-based sunscreens, also known as "physical" sunscreens, use mineral active ingredients such as zinc oxide and/or titanium dioxide which cover the skin and act as a physical barrier, deflecting and scattering UV radiation.

14. In recent years, consumers have become increasingly concerned about using chemical-based sunscreens because chemical active ingredients have been shown to have adverse health effects, including endocrine disruption, skin irritation, allergic reactions, and the production of dangerous free radicals. One reason for

---

[2] "Active" ingredients are those that produce the desired or intended result. In the case of sunscreen products, active ingredients are what protect the skin from harmful UV radiation.

these deleterious consequences is that chemical active ingredients in sunscreen can penetrate a person's skin and enter the bloodstream.

15. As The Environmental Working Group, a nonprofit organization that specializes in research and advocacy, reported:

> Several common chemical filters appear to be endocrine disruptors. Many studies in animals and cells have shown that the chemicals affect reproduction and development by altering reproductive and thyroid hormones, although the evidence is mixed for some studies (Krause 2012). Animal studies report lower sperm counts and sperm abnormalities after oxybenzone and octinoxate exposure; delayed puberty after octinoxate exposure; and altered estrous cycling for female mice exposed to oxybenzone. Recently, Danish researchers reported that eight of 13 chemical sunscreen ingredients allowed in the U.S. affected calcium signaling of male sperm cells in laboratory tests, which the researchers suggest could reduce male fertility (Endocrine Society 2016).

https://www.ewg.org/sunscreen/report/the-trouble-with-sunscreen-chemicals/.

16. Consumers have also become increasingly concerned about the negative environmental effects of chemical-based sunscreens, as the chemicals not only harm humans, but other living organisms such as coral reefs and other marine life. In fact, state lawmakers in Hawaii recently banned two chemical sunscreen ingredients, Octinoxate (which is used in Defendant's Products) and Oxybenzone. In explaining its decision to ban those ingredients, the Hawaii legislature stated:

> Oxybenzone and octinoxate cause mortality in developing coral; increase coral bleaching that indicates extreme stress, even at temperatures below 87.8 degrees Fahrenheit; and cause genetic damage to coral and other marine organisms. These chemicals have also been shown to degrade corals' resiliency and ability to adjust to climate change factors and inhibit recruitment of new corals. Furthermore, oxybenzone and octinoxate appear to increase the probability of endocrine disruption. Scientific studies show that both chemicals can induce feminization in adult male fish and increase reproductive diseases in marine invertebrate species (e.g., sea urchins), vertebrate species (e.g., fish such as wrasses, eels, and parrotfish), and mammals (in species similar to the Hawaiian monk seal). The chemicals also

induce deformities in the embryonic development of fish, sea urchins, coral, and shrimp and induce neurological behavioral changes in fish that threaten the continuity of fish populations. In addition, species that are listed on the federal Endangered Species Act and inhabit Hawaii's waters, including sea turtle species, marine mammals, and migratory birds, may be exposed to oxybenzone and octinoxate contamination.

https://legiscan.com/HI/text/SB2571/2018.

17. Consumers are justified in their concerns over the safety of chemical-based sunscreens. In February 2019, the U.S. Food and Drug Administration issued a proposed rule that would update regulatory requirements for most sunscreen products in the United States.[3] In fashioning the proposed rule, the FDA determined that for 12 of the 16 currently marketed active ingredients in sunscreens, including the Octisalate and Octinoxate present in Defendant's Products, there is insufficient safety data to make a positive GRASE [Generally Recognized As Safe and Effective] determination, which is a designation that the FDA gives a substance when qualified experts consider it generally safe for its intended use.[4] And all 12 of these questionable ingredients are *chemical* active ingredients.[5] The FDA further noted that "[a] number of these [chemical] active ingredients have also shown hormonal effects in mammalian assays (homosalate (Refs. 86 to 92)) and padimate O (64 FR 27666 at 27671) and in in vitro and in vivo assays (homosalate (Refs. 86 to 92), octinoxate (Refs. 93 and 94), and octocrylene (Ref. 95))."[6]

18. On the other hand, according to the FDA, the only two active ingredients for which there exists sufficient information to make a positive GRASE

---

[3] See https://www.federalregister.gov/documents/2019/02/26/2019-03019/sunscreen-drug-products-for-over-the-counter-human-use. See also https://www.fda.gov/news-events/press-announcements/fda-advances-newproposed-regulation-make-sure-sunscreens-are-safe-and-effective.

[4] *Id.*

[5] *Id.*

determination were zinc oxide and titanium dioxide, both of which are minerals used in sunscreens that are of mineral composition, rather than chemical composition.[7]

19. Consequently, because of concerns about chemical-based sunscreens, consumers have increasingly sought out mineral-based sunscreens, driving their prices to premium levels, because they reasonably believe that mineral-based sunscreens do not contain any chemical active ingredients, such as Octisalate and Octinoxate. As a result, sales of mineral-based sunscreens have surged in recent years. This is particularly true for consumers seeking safe sunscreens intended for use on babies and children.

20. Defendant has expressly recognized consumers' concerns about the chemical active ingredients used in sunscreens, claiming on its Blue Lizard product website that "We Love the Reef. Blue Lizard's mineral sunscreens are made without Oxybenzone or Octinoxate – two chemicals thought to contribute to the destruction of our coral reefs." https://bluelizardsunscreen.com/.

**B. The Products' False, Misleading, and Deceptive Labeling**

21. Defendant manufactures, markets, sells, and distributes the Products under its Blue Lizard brand. To obtain an unfair competitive advantage in the billion-dollar sunscreen market, Defendant markets the Products as "mineral-based" even though they contain less desirable, harmful, chemical-based active ingredients.

22. For example, a representative image of the Product Plaintiff purchased is below:

//
//
//

---

[6] https://www.federalregister.gov/documents/2019/02/26/2019-03019/sunscreendrug-products-for-over-the-counter-human-use.
[7] *Id.*





Representative copies of the Product labels are attached hereto as Exhibit "A."

23. As demonstrated by the Product labels, Defendant prominently and uniformly labels the front display panels of the Products – which every consumer is exposed to – with the "mineral-based" representation.

24. Based on the "mineral-based" representations, reasonable consumers, including Plaintiff, believe the Products contain only mineral active ingredients. Put differently, Plaintiff and other reasonable consumers do not believe the Products contain any synthetic chemical active ingredients. This understanding is reasonable because nearly all other sunscreens on the market that are advertised as mineral or mineral-based contain only mineral active ingredients. This includes other products sold by Defendant under the Blue Lizard brand, such as Sensitive Face Mineral Sunscreen SPF 30+ (1.7 oz Tube), Kids Mineral Sunscreen SPF 50+ (Stick), and Active Mineral Sunscreen Spray SPF 50+ (5 oz). Further, even if consumers were required to read the ingredients panel on the back of the label (which they are not, *see Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008)), reasonable consumers do not possess the knowledge of chemists and scientists such that they cannot discern and the point of sale whether the listed ingredients are minerals or chemicals. As it pertains to Defendant's Products, it is not common knowledge that Octisalate and Octinoxate are chemicals and not minerals.

25. Leading to even greater consumer confusion, the Products not only contain the active chemical ingredients Octisalate or Octinoxate (banned in Hawaii), but also contain the mineral active ingredients Titanium Dioxide and/or Zinc Oxide. *See* Exhibit A.

26. Labeling the Products as "mineral-based" when they actually contain chemical active ingredients is wholly misleading and deceptive.

27. By misleadingly and deceptively labeling the Products as described herein, Defendant sought to take advantage of Plaintiff's and other reasonable consumers' desire for pure mineral-based sunscreens and not chemical-based sunscreens masquerading as "mineral-based" by the inclusion of some mineral

active ingredients along with the chemical active ingredients. True mineral-based sunscreens generally contain a significantly higher percentage of mineral active ingredients—often 20-24%—than the Products, and they do not contain any chemical active ingredients.

28.  Defendant has profited from its "mineral-based" misrepresentations at the expense of unwitting consumers—many of whom seek to protect their babies and children—and Defendant's lawfully acting competitors, over whom Defendant has an unfair competitive advantage. Furthermore, the cost of chemical active ingredients is less than the cost of mineral active ingredients. Therefore, by using cheaper chemical active ingredients in lieu of mineral active ingredients, on information and belief, Defendant reduced its manufacturing costs and increased its profits.

## CLASS ACTION ALLEGATIONS

29.  Plaintiff brings this action on behalf of herself and all other similarly situated consumers pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) and seeks certification of the following Class:

**California-Only Class Action**

All California consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased the Products.

Excluded from the Class are Defendant and its officers, directors, and employees, and those who purchased the Products for the purpose of resale.

30.  **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contain thousands of purchasers of the Product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

31.  **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate

over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant's mineral-based representations are false, misleading, or objectively reasonably likely to deceive;

    b. Whether the alleged conduct constitutes violations of the laws asserted;

    c. Whether Defendant engaged in misleading and/or deceptive advertising; and

    d. Whether Plaintiff and Class members are entitled to appropriate remedies, including restitution, corrective advertising, and injunctive relief.

32. **Typicality.** Plaintiff's claims are typical of the Class members' claims because, *inter alia*, all Class members were injured through the uniform misconduct described above. Plaintiff is also advancing the same claims and legal theories on behalf of herself and all Class members.

33. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

34. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same

set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

35. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described and requiring Defendant to provide full restitution to Plaintiff and Class members.

36. Unless a Class is certified, Defendant will retain monies received as a result of its misconduct that were taken from Plaintiff and Class members.

37. Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

## COUNT I
**Violation of California Business & Professions Code §§ 17200, *et seq.***

38. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

39. Plaintiff brings this claim individually and on behalf of the Class.

40. As alleged herein, Plaintiff has suffered injury in fact and lost money or property at the time of purchase as a result of Defendant's conduct because she purchased the Products in reliance on Defendant's mineral-based representations, but purchased Products that actually contained chemical active ingredients.

41. The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* ("UCL") prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

42. **Unlawful Business Practices:** In the course of conducting business, Defendant committed "unlawful" business practices in violation of the UCL by, making the mineral-based representations (which also constitute advertising within the meaning of § 17200), and violating California Civil Code §§ 1572, 1573, 1709, and 1711; the California Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*, and the common law.

43. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

44. **Unfair Business Practices:** In the course of conducting business, Defendant committed "unfair" business acts or practices by, making the mineral-based representations (which also constitute advertising within the meaning of § 17200). There is no societal benefit from false advertising, only harm. While Plaintiff and the public at large were and continue to be harmed, Defendant has been unjustly enriched by its false, misleading, and/or deceptive representations as it unfairly enticed Plaintiff and Class members to purchase the Products. Because the utility of Defendant's conduct (zero) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendant's conduct is "unfair" having offended an established public policy.

45. Defendant also engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

46. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

47. **Fraudulent Business Practices:** In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by making the mineral-based representations (which also constitute advertising within the meaning of § 17200).

48. Defendant's actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq*.

49. Plaintiff relied on Defendant's mineral-based representations and was in fact injured as a result of those false, misleading, and deceptive representations.

50. Unless restrained and enjoined, Defendant will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

51. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seek declaratory relief and an injunction prohibiting Defendant from continuing such practices, corrective advertising, restitution of all money obtained from Plaintiff and the Class collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act – Cal. Civ. Code §§ 1750 *et seq.*

52. Plaintiff repeats and incorporates by reference the allegations contained in the paragraphs 1 through 37 above as if fully set forth herein.

53. Plaintiff brings this claim individually and on behalf of the Class.

54. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

55. Plaintiff is a consumer as defined by California Civil Code § 1761(d). The Products are "goods" within the meaning of the CLRA.

56. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

> (5)   Representing that [the Products have] . . . characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

\*   \*   \*

(7) Representing that [the Products are] of a particular standard, quality, or grade … if [they are] of another.

57. Pursuant to California Civil Code § 1782(d), Plaintiff and the Class seek a Court Order declaring Defendant to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendant, and ordering restitution and disgorgement.

74. Pursuant to § 1782 of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit "B."

75. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages as appropriate.

76. Pursuant to § 1780 (d) of the CLRA, attached hereto as Exhibit "C" is the affidavit showing that this action has been commenced in the proper forum.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims for which a jury is available.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class members, demand judgment against Defendant and requests the entry of:

a. An order certifying the Class as requested herein;

b. An order declaring that the conduct complained of herein violates the laws asserted;

|   |   |   |
|---|---|---|
| | c. | An order requiring Defendant to undertake corrective action, and enjoining Defendant's conduct; |
| | d. | An order awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members; |
| | e. | An order awarding attorneys' fees and costs; and |
| | f. | An order providing such other and further relief as this Court may deem just, equitable, or proper. |

Dated: May 5, 2021

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

<u>*s/Patricia N. Syverson*</u>
Patricia N. Syverson (CA SBN 203111)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 798-4593

Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

*Attorneys for Plaintiff*